# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD TOMALSKI, GLENN ARMSTRONG, STEPHEN MATOTEK, ROBERT HARRIS *AND* CLIFFORD W. HUNT<br>Plaintiffs,<br><br>v<br><br>ARMSTRONG WORLD INDUSTRIES, INC.,<br>Defendant. | 2:12-cv-140 |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court are cross-motions for summary judgment: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 35) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 39). The motions have been thoroughly briefed (Document Nos. 36, 40, 44, 47-49); the parties have fully developed their respective positions as to their Concise Statements of Material Facts ("CSMFs"); and the motions are ripe for disposition.

Factual and Procedural Background

Defendant Armstrong World Industries, Inc. ("Armstrong") owned and operated a manufacturing facility in Beaver Falls, Pennsylvania (the "Beaver Falls Plant"). The five Plaintiffs are former employees of Defendant at the Beaver Falls Plant. Pursuant to a collective bargaining agreement ("CBA"), the United Steelworkers AFL-CIO, CLC and Local Union No. 256L (the "Union") was the exclusive bargaining agency for Plaintiffs.

Pursuant to the CBA, Armstrong was required to provide six months notice prior to a plant closure and to negotiate with the Union concerning the manner in which the closure would

1

be carried out. On July 9, 2010, Armstrong notified the Union of its intent to close the Beaver Falls Plant. Armstrong and the Union held several meetings beginning in August or September 2010. The meetings culminated in the execution of a Plant Closure Agreement and an accompanying Severance Agreement and General Release on October 29, 2010. Armstrong began to shut down operations in January 2011. Production ended in May 2011, although some employees were kept on afterwards to dismantle and clean up the plant.

Both parties contend that this case should be resolved pursuant to the plain language of the Plant Closure Agreement. The Agreement provides, in relevant part:

> ARTICLE III: ELIGIBILITY REQUIREMENTS
>
> Section 1. In order to receive special severance benefits to which an employee is not otherwise entitled, an employee **must meet each** of the eligibility requirements described in Section 2 of this Article. **If an employee does not meet each of these eligibility requirements, he/she shall not receive severance benefits described in this Agreement**.
>
> Section 2. Eligibility Requirements
>
>     A. The employee must be in an active employment status as of July 9, 2010, unless otherwise agreed
>
>     B. Employees **who** continue in employment until the date of permanent closure of their department or the Beaver Falls Plant, or until such other date as released by the Company . . . .
>
>     D. The employee must execute a full and final Waiver and Release of Claims in the form provided by the Company on the last date of employment and not later revoke the same. . . .
>
> ARTICLE VIII:    SEVERANCE BENEFITS
>
> Section 1. Each eligible employee **terminated** as a result of the Beaver Falls plant closing, will receive severance benefits. The severance benefit will be eight hundred dollas ($800.00) for each full year of service (partial years

2

will not be counted) according to the provisions of this Section provided, however, that the **employee must meet all eligibility requirements set forth in Article III** of this Agreement, including but not limited to the execution of a Release and Waiver which is not later revoked. Attached as Exhibit A is the **complete list of possible eligible employees** which was derived from Company records with respect to seniority list as of the week of October 25, 2010.

ARTICLE XI: **COMPLETE AGREEMENT**

    Section 1.    The Company and the Union have met, fully bargained, and agreed with respect to all business issues, decisions, and effects, whether known or unknown, involved with or related to the Company's permanent closure of the Beaver Falls facility, and **all such agreements are embodied in this document**. . . .

    Section 2.    The undersigned affirm that the only consideration for their signing this Agreement are the terms stated above, that **no other promise or agreement of any kind has been made to or with them by any person or entity whomsoever** to cause them to execute this Agreement, and that they fully understand the meaning and intent of this Agreement, including but not limited to its final and binding effect. . . .

(Emphasis added).

Each Plaintiff was "in an active employment status as of July 9, 2010." Edward Tomalski retired on September 30, 2010 after 38 years of service. Glenn Armstrong resigned on October 7, 2010 to take another position after 24 ½ years of service. Stephen Matotek retired on August 31, 2010 after 36 years of service. Robert Harris retired on July 31, 2010 after 35 years of service. Clifford Hunt resigned on October 15, 2010 to take another position after ten (10) years of service. Plaintiffs testified that no representative of Armstrong made statements about severance benefits which influenced their respective decisions to retire. *See* Defendant's CSMF ¶¶ 25-29 and Plaintiffs' Responses thereto. At most, Matotek testified that there were discussions about severance benefits prior to his resignation, "but nothing definite had been decided as negotiations were underway." Plaintiffs' Response to CSMF ¶ 27. None of the Plaintiffs was included in the list of eligible employees in Exhibit A attached to the Plant Closure

3

Agreement. None of the Plaintiffs signed a Waiver and Release form, nor were they provided with an opportunity to do so. Defendant's CSMF ¶ 31 and Plaintiffs' Response thereto.

Standard of Review

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Therefore, the court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *see also Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993) ("Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law.") An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson.*, 477 U.S. at 248.

In order to be entitled to summary judgment, the moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Conoshenti v. Public Service Electric & Gas Company*, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248; *see also McGreevy v. Stroup,* 413 F.3d

359, 363-64 (3d. Cir. 2005).

In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Matreale v. New Jersey Dept of Military & Veterans Affairs*, 487 F. 3d 150, 152 (3d Cir. 2007). Final credibility determination on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *See Josey*, 996 F.2d at 632.

Discussion

Both sides contend that this case should be resolved as a matter of law based on the plain language of the Plant Closure Agreement. Plaintiffs contend that they are eligible for severance benefits because they were in active employment status on July 9, 2010. Armstrong concedes that Plaintiffs are third-party beneficiaries of the Plant Closure Agreement and that they were in active employment status on July 9, 2010. Nevertheless, Armstrong contends that employees were required to fulfill each and every eligibility condition set forth in the Agreement and that Plaintiffs failed to satisfy the condition B (continuation of their employment until the closure date) and condition D (execution of a Waiver and Release).

The parties also dispute whether a "fraud in the inducement" claim is viable under the facts and circumstances of this case. Plaintiffs did not seek summary judgment on this theory, on the ground that there are disputed factual issues. Armstrong contends that Plaintiffs abandoned their fraudulent inducement claim and that it fails as a matter of law. The Court will address these contentions seriatim.

A. Breach of Contract

The Court concludes that Plaintiffs are not entitled to severance benefits under the plain language of the Plant Closure Agreement. Article III Section 1 states that an employee "**must meet each**" of the eight eligibility requirements listed in Section 2(A)-(H). *Accord* Article VIII Section 1 ("the employee must meet **all** eligibility requirements set forth in Article III"). It is undisputed on this record that Plaintiffs did not satisfy condition (B) because they did not continue in their employment until the date of plant closure.[1] Indeed, Plaintiffs resigned from their employment before the Plant Closure Agreement was finalized. It is similarly undisputed that Plaintiffs did not satisfy condition (D) because they did not execute Waiver and Release forms. There has been no evidence to satisfy condition (H) (i.e., an agreement to create an exception to the eligibility requirements on behalf of Plaintiffs). That other employees may have received severance benefits despite leaving their employment early is beside the point. Plaintiffs are asking the Court to award them severance benefits under the Plant Closure Agreement, but they do not qualify under the contractual language.

In conclusion, the Court will grant Defendant's motion for summary judgment as to the breach of contract claim.

B. Fraudulent Inducement

Although the Complaint does not specifically assert a separate cause of action for fraud in the inducement, Plaintiffs have consistently pursued that theory throughout the case. The Court agrees with Plaintiffs that a cause of action is not abandoned/waived merely because a party does

---

[1] The Court acknowledges that condition (B) might have been worded more precisely, by providing that "Employees ***must*** continue in employment . . ." rather than "Employees ***who*** continue in employment . . ." Nevertheless, it is readily apparent that fulfillment of this condition was an Eligibility Requirement.

not seek summary judgment. There is no duty to file a summary judgment motion and many cases proceed directly to trial. Thus, Armstrong's abandonment theory is rejected.

Accordingly, the Court must consider whether a reasonable jury could find in Plaintiffs' favor on a fraudulent inducement claim under the facts and circumstances of this case. Armstrong contends that a fraudulent inducement theory must fail because Plaintiffs have failed to produce evidence of any misrepresentation upon which they reasonably relied. In particular, Armstrong emphasizes that the Plant Closure Agreement did not even exist when Plaintiffs chose to resign from their employment.

The Court will apply the law of Pennsylvania—the state in which this court exists – including Pennsylvania's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Plant Closure Agreement does not contain a "Governing Law" clause, but it is readily apparent that Pennsylvania has the greatest interest in application of its law to this matter, as all parties are Pennsylvania citizens and the contract involves closure of a plant located in Pennsylvania. Indeed, both sides have cited Pennsylvania law. Thus, Pennsylvania law will govern the fraudulent inducement claim.

In Pennsylvania, fraudulent inducement claims require proof of the following elements by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 275-76 (3d Cir. 2010) (citations omitted).

Under Pennsylvania law, if there is a final written contract the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution. *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 592 (E.D. Pa. 1999) (*citing Dayhoff, Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996); *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663, 666 (Pa. Super. 1995); and *HCB Contractors v. Liberty Place Hotel Assoc.*, 652 A.2d 1278, 1279 (Pa. 1995)). "The Pennsylvania parol evidence rule is premised on the principle that if a sophisticated, well-represented party [ ] intends to rely on significant representations made prior to the execution of a fully integrated contract, that party can protect itself from fraud or mistake by including those representations in the final written agreement." *Id*.

The Plant Closure Agreement is a fully integrated contract. Article XI (Complete Agreement) Section 1 provides, in relevant part, that "**all such agreements are embodied in this document**. . . ." *Accord* Article XI Section 2 ("the only consideration for their signing this Agreement are the terms stated above, that **no other promise or agreement of any kind has been made to or with them by any person or entity whomsoever**"). Moreover, the Plant Closure Agreement was negotiated by two sophisticated, well-represented parties. Plaintiffs did not enter into the agreement individually. Instead, their interests were represented by the Union in collective bargaining. *See* Article XI Section 1 ("The Company and the Union have met, fully bargained, and agreed with respect to all business issues, decisions, and effects, whether known or unknown, involved with or related to the Company's permanent closure of the Beaver Falls facility"). Thus, the parol evidence rule applies and Plaintiffs cannot succeed on a fraudulent inducement claim.

8

In addition, the evidentiary record does not support a fraudulent inducement claim. The gravamen of Plaintiffs' legal theory is that Armstrong representatives advised them to retire or seek other employment as soon as possible, in the context of Plaintiffs' concerns about the security of their pensions. Plaintiffs do not base their argument on (and have failed to produce evidence of) specific misrepresentations regarding their entitlement to severance benefits. Indeed, Plaintiffs concede that "Armstrong representatives did not misrepresent information concerning severance benefits . . . ." (Plaintiff's Opposition Brief at 7).

Moreover, the evidence in this case does not satisfy the elements of the claim. Plaintiffs have not produced any evidence of misrepresentations that Armstrong made to the <u>Union</u> – the actual contracting party -- regarding the Plaintiffs' alleged entitlement to severance benefits. In other words, the Court is not persuaded that alleged misrepresentations made to individual union members could form the basis for a fraudulent inducement claim based on a collective bargaining agreement. Given the application of the parol evidence rule and the lack of record evidence regarding any actual misrepresentations, the Court need not resolve this issue.

In summary, the Court will grant Defendant's motion for summary judgment as to the fraudulent inducement claim.

9

Conclusion

In accordance with the foregoing, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 35) will be **GRANTED** and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 39) will be **DENIED**. The case will be marked closed. The Court empathizes with Plaintiffs' frustration that they did not receive severance benefits despite their many years of service. Unfortunately, they are not entitled to such benefits under the terms of the Plant Closure Agreement, for the reasons set forth above. Nor is a fraudulent inducement claim viable under the facts and circumstances of this case.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD TOMALSKI, GLENN ARMSTRONG, STEPHEN MATOTEK, ROBERT HARRIS *AND* CLIFFORD W. HUNT<br>Plaintiffs,<br><br>v<br><br>ARMSTRONG WORLD INDUSTRIES, INC.,<br>Defendant. | 2:12-cv-140 |

### ORDER OF COURT

AND NOW, this 6th day of December, 2012, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 35) is **GRANTED** and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 39) is **DENIED**.

This case shall be docketed closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge


cc:    **Michael B. Jones, Esquire**
       Email: mjones@yourlawfirm.net

       **Larry J. Rappoport, Esquire**
       Email: ljr@stevenslee.com
       **Michael G. Tierce, Esquire**
       Email: mgt@stevenslee.com